UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 6:01-CV-02-KKC

TINA DILLON,                                                    PLAINTIFF,

v.                    **MEMORANDUM OPINION AND ORDER**

LAKE CUMBERLAND MARINE, L.L.C.,
and COBRA POWER CORP.,                                         DEFENDANTS.

* * * * * * * * * * *

This matter is before the post-trial submission of the Plaintiff, Tina Dillon ("Dillon") which the Court has construed as a Motion for Summary Judgment (Rec. No. 107); the Motion for Summary Judgment of the Defendant Cobra Power Corp. ("Cobra") (Rec. No. 118);  and Cobra's Motion to Overrule Amendment of Pleadings (Rec. No. 117).

The events at issue began when Dillon purchased a high performance boat from the Defendant Lake Cumberland Marine, LLC ("Lake Cumberland") which she claimed was defective.  Lake Cumberland sells and services boats. (Rec. No. 96, Trial Tr. Vol. II, Hartmann, p. 51).  Defendant Cobra manufactures "marine packages" which consist of an engine, transmission and outdrive.  (Rec. No. 96, Trial Tr. Vol II,  Garciga, p. 229). Cobra manufactured the marine packages that were installed in Dillons' boat.  (Rec. No. 96, Trial Tr. Vol II., Garciga, p. 233).  Cobra is owned by Randy Garciga ("Garciga").  (Rec. No. 96, Trial Tr. Vol II, Garciga, p. 229).

In her Complaint  (Rec. No. 1, Complaint), Dillon charged Lake Cumberland with breach of contract, breach of express and implied warranty, and violation of the Kentucky Consumer Protection Act ("KCPA"), KRS § 367.110, et. seq.  Dillon  asserted only a charge of breach of express warranty against Cobra.

This case has been considerably complicated because the Court dismissed Cobra from this action

pursuant to an argument it made in its summary judgment motion which its owner Garciga later explicitly contradicted in sworn testimony before the Court. The Court has entered three significant rulings in this case. The first was the Opinion and Order on the parties' cross-motions for summary judgment dated October 27, 2003. The second was an Opinion and Order entered on August 5, 2005 after the bench trial of this matter. The third significant Opinion and Order was entered on June 14, 2006. These opinions and other relevant case history will be summarized below.

I.      FACTS.

A.      October 27, 2003 Opinion on Parties' Motions for Summary Judgment.

In August 2003, the parties filed cross-motions for summary judgment. In its motion, Cobra denied Dillon's assertion that "Cobra provided an express warranty" on the engines. (Rec. No. 58, Mem. Supp. Summ. J. at 9). Cobra argued that it had not expressly warranted the engines. It argued that it had never provided Dillon "a copy of this *alleged* warranty." (Rec. No. 58, Motion for Summary Judgment at 9)(emphasis added). Cobra further argued that because "the engines were sold to Lake Cumberland Marine, not Tina Dillon. . .Tina Dillon lacks privity to maintain suit against" Cobra.   (Rec. No. 58, Mem. Supp. Summ. J., p. 9).

On October 27, 2003, this Court issued a Memorandum Opinion and Order on the parties' cross-motions for summary judgment in which it stated that "Cobra argues that it is entitled to summary judgment because it made no warranty to Dillon and there is no privity of contract between it and Dillon." (Rec. No. 71, Memorandum Opinion and Order, p. 3). The Court noted that the only evidence of Cobra's warranty cited by Dillon was a wholesale price list that Cobra gave to Lake Cumberland – not to Dillon. The Court further noted that Randy Hartmann, an owner and General Manager of Lake Cumberland, had testified in his deposition that the wholesale price list was not intended to be given to the ultimate customer. (Rec. No. 62, Hartmann Dep. pp. 47-48).

The Court found that the document did not create an express warranty by Cobra to Dillon. (Rec. No. 71, Memorandum Opinion and Order, p.3). Thus, the Court dismissed Dillon's breach of express warranty claim against Cobra. The Court also dismissed Dillon's breach of implied warranty claim against Lake Cumberland. (Rec. No. 71, Memorandum, Opinion & Order).

**B.      August 5, 2005 Opinion and Order after Bench Trial.**

As a result of the Court's October 27, 2003 Opinion and Order, the only remaining claims in this action were Dillon's breach of contract and KCPA claims against Lake Cumberland. Again, in that Opinion and Order, the Court agreed with Cobra's argument that it extended no warranty to Dillon and there was no privity of contract between Cobra and Dillon. At the subsequent bench trial of this matter, however, Cobra's owner, Garciga, testified that Cobra did, in fact, warrant the engines for 6 months and that the beneficiary of the warranty was Dillon. (Rec. No. 96, Trial Tr. Vol. II, Garciga pp. 235-36, 256, 303-04). He further testified that the warranty is embodied in its wholesale pricing list which states "6 MONTH WARRANTY (UNCONDITIONAL)." (Rec. No. 96, Trial Tr. Vol. II, Garciga, p. 236; Trial Ex. JE-2).

Garciga testified that Cobra warrants the engines for six months from the date the boat is sold, delivered and tested. (Rec. No. 96, Trial Tr. Vol. II, Garciga, p. 235). He testified that this means the engines are warranted for six months from when the boat owner begins using the boat. (Rec. No. 96, Trial Tr. Vol. II, Garciga, pp. 236, 256). Garciga testified that the only "printed-up literature" regarding the Cobra warranty is the whole sale price list that states "6 Month Warranty (Unconditional)." (Rec. No. 96, Trial Tr. Vol. II, Garciga, p. 236). Garciga testified that there is no literature or other documentation that limits the Cobra warranty whatsoever. (Rec. No. 96, Trial Tr. Vol. II, Garciga, p. 272). *Despite Cobra's explicit argument to the contrary in its Motion for Summary Judgment*, Garciga testified that Cobra gave an unconditional warranty to Dillon. (Rec. No. 96, Trial Tr. Vol. II, Garciga,

p. 303-04).

Garciga also testified that one of the engines installed in Dillon's boat (the "first engine") was sent to Cobra for repair and that he then built a new engine that he shipped to Lake Cumberland to install in Dillon's boat. (Rec. No. 96, Trial Tr. Vol. II, Garciga p. 247). Garciga testified that he then billed Lake Cumberland for the repairs to the first engine but the invoice was never paid. (Rec. No. 96, Trial Tr. Vol. II, Garciga p. 249). Garciga testified that, between September 9 and September 14, 2000, he received Dillon's second engine (the "second engine") to inspect. (Rec. No. 96, Trial Tr. Vol. II, Garciga p. 250). He did not return this second engine to Dillon but instead held it until he received payment for repairs to the first engine. (Rec. No. 96, Trial Tr. Vol. II, Garciga, p. 300). Garciga testified, however, that he would have given the second engine to Dillon if she had threatened to sue Cobra. (Rec. No. 96, Trial Tr. Vol. II, Garciga, p. 298).

Garciga conceded that the second engine – which, prior to the bench trial, he gave to Lake Cumberland for potential use as a trial exhibit – belonged to Dillon. (Rec. No. 96, Trial Tr. Vol. II at 306). Garciga also conceded that, during his deposition in this matter, Dillon's counsel demanded that the engine be returned to her. (Rec. No. 96, Trial Tr. Vol. II at 300).

At the end of the bench trial, the Court orally ordered Dillon and Lake Cumberland to file summary statements. The Court requested that Dillon specifically address whether the Court had authority pursuant to Fed. R. Civ. P. 54(b) to revise its summary judgment ruling dismissing Cobra in light of Garciga's testimony at trial. (Rec. No. 93). Dillon and Lake Cumberland then filed post-trial statements (Rec. Nos. 99-102). It appears from the record that neither party served any of these pleadings on Cobra.

After receipt of the post-trial statements, on August 5, 2005, the Court entered a Memorandum Opinion and Order (Rec. No. 103) containing the Court's findings of facts and conclusions of law.

4

Based on Garciga's testimony, the Court found that Cobra did extend a "6 Month Unconditional Warranty" on the engines to Dillon. The Court also found that Garciga's testimony made clear that the written terms of that warranty are found exclusively in the Cobra "Wholesale Pricing" list.

Accordingly, the Court ordered that the Memorandum Opinion and Order on the parties' Motions for Summary Judgment (Rec. No. 71) was vacated to the extent that it found that Cobra did not warrant the engines to Dillon and to the extent that it dismissed Cobra as a party to this action. The Court also found that, even assuming the truth of all of Garciga's testimony, Cobra breached the 6-month unconditional warranty on the engines when it refused to return the second engine unless Dillon paid for repairs to the first.

The Court determined that Dillon was entitled to recover the difference between the value of the engines contracted for and the value of the engines she received. Dillon contracted to receive two Cobra 750 HP engines. She now had one Cobra 750 HP engine because Cobra had never returned the "second engine." Thus, the Court found that Dillon was entitled to recover from Cobra the difference between the $70,400 she paid for the two Cobra 750 HP engines and the value of the single engine she now had and any incidental or consequential damages caused by Cobra's breach of warranty.

As to Lake Cumberland, the Court ruled that Dillon's breach of warranty claims against Lake Cumberland remained dismissed and further dismissed her breach of contract claim against Lake Cumberland.

The Court ordered Dillon to submit evidence of the value of the single engine that was in her possession and of any incidental or consequential damages she had suffered as a result of Cobra's failure to return the other engine to her. The Court further ordered Cobra to file any response within ten days from the date that Dillon filed the evidence. Finally, the Court ordered that, if Dillon chose to amend her Complaint to assert a conversion and/or KCPA claim against Cobra, she must do so within 20 days.

5

All parties, including Cobra, received a copy of the August 5, 2005 Opinion and Order.

      **C.     Filings by Dillon and Cobra in Response to August 5, 2005 Opinion and Order.**

On September 2, 2005, Cobra filed a Notice of Appeal from the August 5, 2005 Opinion and Order. (Rec. No. 105). On September 7, 2005, Dillon filed her post-trial submission and served Cobra's counsel with a copy of it. (Rec. No. 107). In it, Dillon asserted that she was entitled to damages of $392,535.60 for Cobra's breach of warranty.  Dillon also asked the Court to amend her complaint to conform to the evidence presented at trial and permit her to add conversion and KCPA claims against Cobra pursuant to Fed. R. Civ. P. 15(b).  She argued that, pursuant to these claims, she was entitled to punitive damages and attorney's fees. Dillon served a copy of her submission on Cobra's counsel.

On September 19, 2005, Cobra filed a response to Dillon's Post-Trial Submission, in which it requested that the submission be stricken because it was not timely filed.  (Rec. No. 110).  Cobra declined to further address Dillon's post-trial submission because the "Memorandum Opinion and Order upon which the submission is premised has been appealed to the" Sixth Circuit and, "this Court no longer has continuing jurisdiction over this matter." (Rec. No. 110).  On November 15, 2005, the Sixth Circuit entered an Order dismissing Cobra's appeal *sua sponte* and without prejudice finding that the August 5, 2005 Opinion and Order was not a final, appealable order. (Rec. No. 112).  On January 23, 2006, Cobra filed its Supplemental Response to Dillon's post-trial submission.  (Rec. No. 115).

In its supplemental response, Cobra argued that, because it was not a party to the bench trial, it did not have the opportunity to cross examine any of the witnesses presented by the other parties, to present its own witnesses or testimony on its own behalf or to file a post-trial memoranda with the Court. (Rec. No. 115 at 2).  Cobra argued that it was unable to address Dillon's damages without cross-examining Dillon and her experts and inspecting the boat and the engine in Dillon's possession. (Rec. No. 115 at 3).  Cobra stated that it needed to conduct its own appraisal of the boat and to find out

whether Dillon had mitigated her damages by maintaining the boat properly.  (Rec. No. 115 at 4).

Cobra disputed that Dillon was entitled to recover the amounts paid for both of its engines because she still had one engine in her possession that had substantial value.  It submitted the affidavit of Garciga who stated he would purchase the engine from Dillon for $20,000.   (Rec. No. 115, Ex. A). Cobra argued that Dillon had presented no evidence to substantiate the amounts she claimed for incidental and consequential damages.

Cobra did not address Dillon's argument that, pursuant to Fed. R. Civ. P. 15(b), the Court should amend her complaint to conform to the evidence presented at trial and permit her to add a claim for conversion against Cobra and a claim that Cobra violated the KCPA.

### D.    Court's June 14, 2006 Opinion and Order (Rec. No. 116).

### 1)    Court Determines Summary Judgment Opinion must be Revised.

On June 14, 2006, the Court entered an Opinion and Order  in which it stated that it was clear that the Court's opinion on the parties' cross-motions for summary judgment must be revised.  Again, in its October 27, 2003 summary judgment ruling, the Court had dismissed Cobra pursuant to Cobra's argument that it did not warrant the engines.  Cobra owner Randy Garciga, however, had  testified that Cobra warrants the engines for six months from the date the boat owner begins using the boat and that the terms of the warranty are found only in the wholesale pricing list which states "6 MONTH WARRANTY (UNCONDITIONAL)."  (Trial Ex. JE-2).  Thus, it was clear  that –even if the Dillons removed oil from the engines at Garciga's suggestion as Garciga testified (Rec. No. 96, Trial Tr. Vol. II,  Garciga, pp. 260-61) – Cobra had breached its 6-month unconditional warranty on the engines when it held Dillon's second engine and refused to return the second engine to Dillon unless she paid for repairs to the first engine. This testimony completely removed the Court's basis for dismissing Cobra from this action.

**2)      Court Grants Cobra Opportunity to Respond to Breach of Warranty Finding.**

Having decided that the summary judgment opinion must be revised in light of Garciga's trial testimony, the Court determined that the next issue was whether it should permit Cobra an opportunity to object to the Court's finding in the August 5, 2005 Opinion that Cobra breached its warranty. Despite having had the opportunity to do so, Cobra had never objected to the Court's finding that Cobra breached its warranty. The Court's Opinion and Order making the finding was served on Cobra. (Rec. No. 103). In its response (Rec. No. 110) and supplemental response (Rec. No. 115), Cobra objected only to certain damages submitted by Dillon but never objected to the Court's underlying finding that Cobra breached its warranty.

Nevertheless, the Court recognized that Cobra did not have the opportunity to file a written statement after the bench trial as the other parties to this matter did. In addition, Cobra had informed the Court that neither of the parties had served Cobra with a copy of its post-trial statement. Accordingly, the Court granted Cobra 20 days to file a pleading showing cause why, in light of Garciga's sworn trial testimony, the Court's Opinion and Order on the parties' motions for summary judgment should not be revised to find that Cobra breached the unconditional warranty it extended to Dillon. (Rec. No. 116, Opinion, p. 11).

**3)      Court Determines Damages for Breach of Warranty.**

As to any potential damages for breach of warranty, the Court determined that Cobra did not need to inspect the engine in Dillon's possession to determine its value because Garciga himself had submitted a sworn affidavit stating he would pay $20,000 for the engine. This affidavit was the sole evidence in the record of the value of the single engine Dillon had. Accordingly, Cobra did not need to "cross-examine" Dillon's evidence on the engine's value. Cobra had submitted the sole evidence on this issue. Pursuant to Garciga's affidavit, the Court found that the single engine in Dillon's possession had

8

a value of $20,000.  Thus, the Court stated, if Cobra failed to show cause why it should not be found to have breached its warranty, Dillon would be entitled to actual damages of $50,400 – the difference between the amounts she paid for the two Cobra engines and the value of the one she now had in her possession.

Dillon's list of incidental and consequential damages consisted of amounts paid for boat dock rental, boat insurance, boat storage, interest on the amount financed for the boat, lost interest on the amount Dillon paid in cash for the boat and the lost value of the boat (purchase price minus current appraised value).  (Rec. No. 107, p. 5). The Court determined that these items were not recoverable because Dillon would have incurred these charges even if the engines and Cobra had performed as required under the warranty.

### 4)   Court Grants Cobra Opportunity to Respond to KCPA and Conversion Claims.

With her post-trial submission, Dillon also asked the Court, pursuant to Fed. R. Civ. P. 15(b), to amend her complaint to conform to the evidence presented at trial and permit her to add a conversion and KCPA claim against Cobra.  In its response, Cobra did not raise any argument against Dillon's motion to amend her complaint or otherwise address the motion. (Rec. No. 115).

In the June 14, 2006 Opinion, the Court determined that Rule 15(b) was inapplicable. The Court, however, construed Dillon's motion as a motion to amend her complaint under Rule 15(a) to add a KCPA and conversion claim and granted the motion.

In addition, because Dillon had fully addressed the merits of her KCPA and conversion claims in her post-trial submission,  the Court stated that it saw no reason to require Dillon to incur further legal fees and delay in the resolution of this case by requiring her to file a Motion for Summary Judgment again addressing the merits of these claims.  Based upon Garciga's testimony at the bench trial of this matter and Dillon's post-trial submission, the Court found that Dillon had established that Cobra was

likely liable to Dillon for conversion and for a violation of the KCPA. Thus, the Court construed Dillon's post-trial submission as a Motion for Summary Judgment on these claims and granted Cobra twenty days to file a response.

     5)     **Court Determines Dillon may be Entitled to Attorney's Fees and Punitive Damages and Grants Cobra Opportunity to Respond.**

In her post-trial submission, Dillon argued that she was entitled to her attorneys' fees and costs pursuant to the KCPA. KRS § 367.220 (3). The Court noted that, in its response to Dillon's post-trial submission, Cobra did not address either whether Dillon was entitled to attorney's fees or the reasonableness of the fees she sought to recover. In her post-trial submission, Dillon also requested punitive damages from Cobra of $250,000 pursuant to her conversion claim. The Court noted that Cobra had not responded to Dillon's argument that she was entitled to punitive damages. The Court granted Cobra 20 days to respond to Dillon's request for punitive damages and attorney's fees.

     II.     **ANALYSIS**

     A.     **Breach of Warranty Claim.**

Cobra has responded to the Court's June 14, 2006 Memorandum Opinion and Order (Rec. Nos. 119 and 120). Cobra also moves the Court for summary judgment in its favor on the breach of warranty claim. (Rec. No. 118, Motion for Summary Judgment; Rec. No. 119, Response at 8). In the alternative, it asks the Court to allow Cobra to continue discovery and to consult with potential expert witnesses regarding the breach of warranty claim. Cobra also asks the Court to conduct a trial on the claim instead of revising its summary judgment ruling to find Cobra liable for breach of warranty. (Rec. No. 119, Response at 8).

With regards to the breach of warranty claim, as the case is now postured, the Court's October 27, 2003 summary judgment ruling has been vacated insofar as it dismissed the breach of warranty claim

10

against Cobra. The issue before the Court is whether it should revise that ruling pursuant to Fed. R. Civ. P. 54(b) and, in reliance on Garciga's trial testimony, find that Cobra breached the warranty.

### 1) Whether the Court Should Consider Garciga's Trial Testimony in Revising its Summary Judgment Ruling.

In its Response, Cobra does not dispute that, pursuant to Fed. R. Civ. P. 54(b), the Court may revise its summary judgment ruling. Instead, it appears to argue that, in revising the ruling, the Court should not consider Garciga's testimony. Cobra argues that its due process rights will be violated if the Court considers Garciga's testimony because at the bench trial where the testimony was given, Cobra did not have the opportunity to cross examine any of the witnesses presented by either Dillon or Lake Cumberland or to present witnesses on its own behalf; and its counsel was unaware that Garciga would be testifying before the Court.

It is well-settled that sworn testimony from another trial is admissible on a motion for summary judgment. *Langston v. Johnson,* 478 F.2d 915, 918 n. 17 (D.C.Cir.1973) ("it is well settled that a certified transcript of judicial or administrative proceedings may be considered on a motion for summary judgment"); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 899 F.Supp. 974, 985 (E.D.N.Y.1994) ("courts have routinely relied on prior trial testimony as proper evidence in deciding summary judgment motions"). Transcript testimony serves the same purpose as an affidavit under Fed.R.Civ.P. 56 and is comparable in that each form of testimony is sworn and submitted without cross-examination by the adverse party. *Kraft General foods, Inv. v. Cattell*, 18 F.Supp. 2d 280, 284 (S.D.N.Y. 1998)( citing *Ricupero v. Wuliger, Fadel, & Beyer,* 1994 WL 483871, at *4 (N.D.Ohio Aug.26, 1994).

If the Court may consider sworn testimony that occurred in another matter before another court on a motion for summary judgment, it most certainly can consider sworn testimony that occurred in *this* matter before *this* Court.

11

Furthermore, as the Court noted in its June 14, 2006 Opinion and Order, the reason that Cobra was not a party to the bench trial was because of its false argument on summary judgment that it did not warrant the engines. The Court further noted that Garciga is the owner of a multi-million dollar nationwide business. (Rec. No. 96, Trial Tr. Vol. II, Garciga p. 301). He has been represented by counsel throughout this proceeding. (Rec. No. 96, Trial Tr. Vol. II, Garciga p. 229). Garciga not only was a witness at the trial, he also testified that he cooperated in Lake Cumberland's trial preparation by giving Dillon's second engine to Lake Cumberland for use as a trial exhibit. (Rec. No. 96, Trial Tr. Vol. II, Garciga p. 297). The Court determined that Garciga had surely informed Cobra's counsel of these discussions, of the trial and of the fact that he would be serving as a witness. Cobra's counsel was just as surely aware that the Court's summary judgment could be revised pursuant to Fed. R. Civ. P. 54(b). Thus, the Court found no reason to ignore Garciga's trial testimony simply because he chose to forego having counsel present for that testimony.

Further, the Court found that the fact that Cobra was unable to cross-examine other trial witnesses was irrelevant to the issue of whether the Court could consider Garciga's trial testimony in revising its summary judgment ruling. While the Court was required to consider all of the trial testimony in determining Lake Cumberland's liability to Dillon, Garciga's testimony alone established that Cobra warranted the engines and breached the warranty. Thus, whether Cobra was able to cross-examine other witnesses was irrelevant to the Court's finding that Cobra breached its warranty.

Cobra also argues that its due process rights will be violated if the Court considers Garciga's trial testimony in revising its summary judgment ruling because Cobra was not given the opportunity to file post-trial submissions. The fact that Cobra did not have an opportunity to file a post-trial submission is also irrelevant to the issue of whether the Court should consider Garciga's trial testimony in revising its ruling on summary judgment. Furthermore, Cobra has had a multitude of opportunities to respond

to Dillon's breach of warranty claim.  Its first such opportunity came after the discovery on this issue was complete when the parties filed their first motions for summary judgment.  At that time, Cobra chose to argue that it did not warrant the engines.

Since Garciga's testimony at the bench trial, Cobra has been given the opportunity to file several pleadings specifically addressing whether the Court should revise its ruling on the parties' motions for summary judgment to enter judgment on the breach of warranty claim against Cobra.  In formulating each of these pleadings, Cobra had at its disposal all discovery that the parties had conducted in this matter and the transcript of the bench trial.

On September 19, 2005, Cobra filed a response to Dillon's post-trial submission (Rec. No. 110) and on January 23, 2006, Cobra filed a Supplemental Response to Dillon's post-trial submission (Rec. No. 115). Later, in its June 14, 2006 Opinion and Order, the Court explicitly granted Cobra yet another opportunity to show cause why, in light of Garciga's sworn trial testimony, the Court's Opinion and Order on the parties' motions for summary judgment should not be revised to find that Cobra breached the unconditional warranty it extended to Dillon. (Rec. No. 116, pp. 11, 19).  Cobra has received all process due on Dillon's breach of warranty claim.

As to Cobra's request for additional discovery on the breach of warranty claim, the parties have already conducted discovery on this issue.  Cobra has put forth no reason to reopen discovery on the breach of warranty claim.  As to Cobra's request that the Court conduct a trial on Dillon's breach of warranty claim against it instead of revising its summary judgment ruling to grant Dillon summary judgment on the claim, a bench trial (which is what the Plaintiff requested in this case) is only necessary if Cobra has raised an issue of fact that must be resolved by a bench trial. As will be explained further below, Cobra has not raised any such issue of fact.

**2)      Whether Cobra has raised an Issue of Fact on Dillon's Breach of Warranty Claim.**

With its response, as it must in light of Garciga's trial testimony, Cobra abandons the argument put forth in its first Motion for Summary Judgment that it did not warrant the engines. Instead, in its response and second Motion for Summary Judgment, Cobra now argues that it did not breach the warranty. Again, this Court has found that, assuming the truth of Garciga's testimony, Cobra breached the 6-month unconditional warranty on the engines when it refused to return the second engine unless Dillon paid for repairs to the first.

Cobra argues that Dillon has produced no evidence that she ever demanded the return of the second engine from Cobra.  Again, Cobra misstates the record.  Garciga himself testified that, during Garciga's deposition in this matter, Dillon's counsel demanded that the engine be returned to her.  (Rec. No. 96, Trial Tr. Vol. II, Garciga, p. 302).  Dillon's counsel did indeed make such a demand during the deposition. (Rec. No. 62, Garciga Dep., p. 122).

More importantly, however, whether Dillon ever officially demanded the return of the second engine is irrelevant to Dillon's breach of warranty claim. Cobra unconditionally warranted the engines. It breached that warranty when it held Dillon's second engine until someone agreed to pay for repairs to the first.  This is true whether Dillon ever officially demanded that Garciga return the engine to her or not.  Cobra has raised no issue of fact with regard to Dillon's breach of warranty claim. Thus, for the reasons stated in this Opinion and those stated in the Court's August 5, 2005 Opinion, the Court finds that Cobra breached the warranty on the engines. Accordingly, the Court's October 27, 2003 Opinion and Order will be revised to find that 1) Cobra breached its warranty on the engines and, therefore, 2) Cobra's first Motion for Summary Judgment is DENIED and 3) Dillon's Motion for Summary Judgment is GRANTED as to her claim that Cobra breached the warranty.  For the same reasons, Cobra's second Motion for Summary Judgment on Dillon's breach of warranty claim will also be DENIED.

3)      **Actual Damages for Breach of Warranty.**

In its response, Cobra also complains that the Court never ruled on its "motions" asking the Court to make the boat and the single engine in Dillon's possession available for inspection by Cobra; to schedule a hearing so that Cobra could cross-examine Dillon, her experts and her documentation of the damages claimed; and to allow Cobra to take testimony regarding the damages alleged by the Plaintiff and to conduct its own appraisal of the boat and engine.  Cobra states that these "motions" were contained in a pleading titled "Supplemental Response to Tina Dillon's Post-trial Submission."  (Rec. No. 115).

Again, however, in its August 5, 2005 Opinion, the Court determined that Dillon was entitled to recover from Cobra actual damages resulting from its breach of warranty in an amount equal to the difference between the $70,400 she paid for the two Cobra 750 HP engines and the value of the single engine she had in her possession. Thus, the sole issue on Dillon's damages was the value of the single engine she possessed.  On this issue, Cobra itself submitted the sole evidence that the Court considered. This evidence was Garciga's affidavit stating that the engine was worth $20,000.

Thus, the value of the boat itself was irrelevant to Dillon's damages and Cobra had no need to inspect the boat.  Likewise, Cobra had no need to conduct cross examination on the evidence of the engine's worth since it had presented the sole evidence on this issue.  Finally, Cobra had no need for an appraisal of the engine in addition to that it had already offered the Court. Cobra is now well aware that it has presented the sole evidence on the value of the first engine and that the Court has relied only on that evidence in determining Dillon's damages.  Thus, Cobra's continuing  request for additional inspection and cross-examination of this evidence is disingenuous at best.

With its response, Cobra also submits Garciga's affidavit stating that, after the Court's June 14, 2006 Opinion, Lake Cumberland, with Cobra's consent, returned the second engine to Dillon. Cobra

states that "Randy Garciga has previously submitted an Affidavit setting forth that the engine which had been in his possession is worth at least $20,000." Cobra, argues it, thus, "can be surmised," that the second engine recently returned to Dillon is also worth $20,000.  The Court finds that Garciga's prior affidavit submitted in January 2006   regarding the value of the first engine is of little benefit in establishing the current value of the second engine.

In 1999, Dillon paid $70,400 for two warranted Cobra 750 HP engines.  In September 2000, Cobra began holding the second engine, refusing to return it even after this litigation commenced and Dillon's counsel demanded its return.  Instead, just before the bench trial of this matter, Cobra sent the second engine to its co-Defendant for use at trial. It was not until some time after June 2006 that anybody returned the engine to Dillon. The Court finds that the second engine which was returned to Dillon approximately seven years after she purchased it with an unconditional warranty and only after she was forced to initiate litigation, was not what Dillon contracted to receive.  This engine has no value to Dillon.  Accordingly, as stated in the Court's June 2006 Opinion, Dillon is entitled to $50,400 in actual damages for Cobra's breach of warranty.

### B.    KCPA and Conversion Claims.

### 1)    Cobra's Motion to Overrule Amendment of Pleadings.

Cobra has also filed a Motion to Overrule Amendment of Pleadings (Rec. No. 117) in which it asks the Court to "overrule the amendment of the Plaintiff's Complaint to assert additional causes of action for conversion and violation of the KCPA."  Cobra argues that, in its June 14, 2006 Opinion and Order,  the Court wrongfully permitted Dillon to amend her Complaint because Cobra had no notice of the motion and was not afforded the opportunity to respond to it.

Again, Cobra's argument is contradicted by the record.  Dillon's motion to amend her Complaint to add the KCPA and conversion claims was made in a pleading filed with the Court on September 7,

16

2005 and *served on Cobra*. (Rec. No. 107). Cobra filed a response on September 19, 2005 in which it failed to address Dillon's motion to amend. (Rec. No. 110). Cobra then filed a "Supplemental Response" on January 23, 2006. (Rec. No. 115). Again, Cobra failed to address Dillon's motion to amend her Complaint.

Cobra also argues that it will be unduly prejudiced if Dillon is permitted to amend her pleadings at this point in this matter because discovery is closed and additional discovery will be necessary on the KCPA and conversion claims. The Sixth Circuit has recognized that "allowing amendment after the close of discovery creates a significant prejudice." *Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

Under the KCPA, all unfair, false, misleading or deceptive acts or practices in the conduct of any trade or commerce are declared to be unlawful. KRS § 367.170(1). The term "unfair" is defined to mean "unconscionable." KRS § 367.170(2). "The statute requires some evidence of 'unfair, false, misleading or deceptive acts' and does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present." *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991).

Dillon's initial complaint asserted only a breach of warranty claim against Cobra. This is the only claim against Cobra that existed at the time of discovery. Breach of warranty does not necessarily entail any allegation of unfair, false, misleading or deceptive acts. While the KCPA claim would involve many of the same facts as the breach of warranty claim, the initial complaint does not put Cobra on notice of a charge that it acted in an unfair, false, misleading or deceptive way. Accordingly, in order to prevent any undue prejudice to Cobra, additional discovery on this claim would be necessary. The re-opening of discovery, however, would also substantially prejudice both parties in this action, requiring Dillon to incur additional legal fees and prolonging the resolution of this matter. The benefits of adding

the KCPA claim at this point in the proceeding are outweighed by the prejudice it would cause to all parties in this action. Accordingly, the Court will grant Cobra's Motion to Overrule Amendment of Pleadings insofar as it pertains to the KCPA claim.

As to Dillon's conversion claim, she is required to show that: 1) she had legal title to the second engine; 2) she had the right to possess the second engine at the time of conversion; 3) Cobra exercised dominion over the property in a manner which denied Dillon the right to use and enjoy the property and which was to the Cobra's own use and beneficial enjoyment; 4) Cobra intended to interfere with Dillon's possession of the engine; 5) Dillon made some demand for the property's return which Cobra refused; 6) Cobra's act was the legal cause of Dillon's loss of the property; and 7) Dillon suffered damage by the loss of the property. *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)(quoting 90 C.J.S. Trover and Conversion § 4).

Thus, the issue on Dillon's conversion claim is whether, in failing to honor Dillon's warranty, Cobra converted an engine belonging to Dillon for Cobra's own benefit. The facts supporting the breach of warranty claim are the same as those supporting the conversion claim. Thus, the conversion claim does not raise any new factual issues. No additional discovery is necessary on this claim and Cobra is not unduly prejudiced by the addition of the claim at this point in the proceedings. Accordingly, Cobra's Motion to Overrule Amendment of the Pleadings will be denied insofar as it pertains to the conversion claim

### 2) Whether Cobra has Raised an Issue of Fact on Dillon's Conversion Claim.

Cobra also files a Motion for Summary Judgment on Dillon conversion claim. (Rec. No. 118). Cobra argues that it "fully honor[ed] the warranty and completed all repair work on the engines and outdrives." (Rec. No. 119 at 8). As will be explained further below, the Court has declined to award Dillon any damages for her conversion claim. Nevertheless, the Court will address the merits of the

claim. Garciga's trial testimony established that Cobra extended an unconditional warranty on the engines to Dillon. Cobra, nonetheless, insisted that Dillon or someone pay for repairs to the first engine. At trial, Garciga conceded that the second engine belonged to Dillon and that Cobra was holding it until someone paid Cobra for repairs done to the first engine. Garciga stated that he would have returned the second engine to Dillon had she threatened a lawsuit. Nonetheless, Cobra did not return the second engine to Dillon even after this litigation began and Dillon's counsel demanded the engine.

Cobra argues that Dillon has not produced any evidence that she demanded the engines. At the same time, however, Cobra argues that such demands occurred but claims they all occurred during settlement negotiations and should not be considered by the Court. Whether or not any demands were made during settlement negotiations, as the Court has previously stated, Garciga himself testified that, during Garciga's deposition in this matter, Dillon's counsel demanded that the engine be returned to her. (Rec. No. 96, Trial Tr. Vol. II at 300). In that deposition, Dillon's counsel specifically put Garciga on notice that the Dillons were demanding the return of their engine and Garciga acknowledged that the Dillons were demanding the return of the engine. (Rec. No. 64, Garciga Dep. at 122, 124). Garciga's deposition does not constitute settlement negotiations. Accordingly, there is explicit evidence in the record that Dillon demanded the second engine from Cobra.

Cobra also argues that Dillon should not be awarded summary judgment on her conversion claim because Dillon offered no evidence that Cobra exercised dominion over the property in a manner which was to Cobra's own use and beneficial enjoyment. In reality, however, Garciga testified he held the second engine to induce Dillon or someone to pay him for the work done on the first engine. (Rec. No. 96, Trial Tr., Garciga at 300). Accordingly, by using his possession of the second engine as leverage to obtain payment for repairs to the first engine, Garciga used his possession of the second engine for his own benefit.

19

For the reasons stated and for those further detailed in the Court's June 14, 2006 Opinion and Order, the Court finds that Dillon has established that Cobra converted the second engine. Cobra has raised no issue of fact regarding Dillon's conversion claim.

**3)    Punitive Damages.**

In her post-trial submission, Dillon did not request any actual damages for her conversion claim. In its June 14, 2006 Opinion and Order, the Court determined that, since it had already ruled that, as damages for Cobra's breach of warranty, Dillon would be entitled to the difference between the amount she paid for both engines less the value of the engine in her possession, Dillon had been compensated for any actual damages she suffered as a result of Cobra's conversion of the second engine. Nevertheless, the Court determined that Dillon may be entitled to punitive damages on this claim.

Cobra argues that Dillon is not entitled to punitive damages in this action because there has been no allegation of "gross negligence, deliberate or intentional wrongdoing" by Cobra. While the court finds that Cobra's actions constitute breach of warranty and conversion, the Court does not find sufficient evidence in the record to warrant an award of punitive damages.

**III.    CONCLUSION.**

For all the above reasons, the Court hereby ORDERS as follows:

1)    The Court's October 27, 2003 Opinion and Order on the parties' cross-motions for summary judgment (Rec. No. 71) is REVISED to find that Cobra breached the warranty on the engines installed in Dillon's boat; that Dillon's Motion for Summary Judgment on her claim against Cobra is GRANTED and is otherwise DENIED (Rec. No. 51); and that Cobra's first Motion for Summary Judgment on this claim (Rec. No. 57) is DENIED;

2)    Judgment SHALL be entered awarding Dillon actual damages for Cobra's breach of

warranty of $50,400;

3)      Cobra's Motion for Summary Judgment (Rec. No. 118) is DENIED;

4)      Cobra's Motion to Overrule Amendment of Pleadings (Rec. No. 117) is GRANTED as

to Dillon's KCPA claim and is otherwise DENIED; and

5)      This matter is STRICKEN from the active docket of this Court.

Dated this 14th day of December, 2006.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**